**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission, )<br><br>Plaintiff, )<br><br>vs. )<br><br>Go Daddy Software, Inc., )<br><br>Defendant. )<br>_____ ) | No. CV-04-2062-PHX-DGC<br><br><br>**ORDER** |

        Pending before the Court are Defendant's motion for summary judgment and motion to strike.  Docs. ##94, 117.  Also pending are Plaintiff's motion for partial summary judgment, motion for leave to amend complaint, and motions to strike.  Docs. ##96-97, 107, 115.  The Court will grant in part Defendant's motion for summary judgment (Doc. #94), grant in part Plaintiff's motion for partial summary judgment (Doc. #97), deny Plaintiff's motion for leave to amend complaint (Doc. #96), and deny the parties' motions to strike (Docs. ##107, 115, 117).[1]

---

        [1] The Court will deny the request for oral argument because the parties have submitted memoranda thoroughly discussing the law and evidence and the Court concludes that oral argument will not aid its decisional process. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

I.      **Background.**

In September 2001, Youssef Bouamama, a Muslim born in Morocco, began working for Defendant Go Daddy Software, Inc. through a temporary agency as a technical support representative.  Docs. ##95, 109.  On December 13, 2001, Defendant officially hired Mr. Bouamama as one of its employees.  *Id*.  Mr. Bouamama subsequently assumed a supervisory position in Defendant's call center and was eventually promoted to inbound sales manager by Brett Villeneuve, Defendant's Operations Manager.  *Id*.  During Mr. Bouamama's tenure at Defendant, Mr. Villeneuve served either as his immediate or second-line supervisor.  Doc. #95.

In April 2003, Defendant hired Craig Franklin as its Director of Call Center Operations.  *Id*.  Mr. Franklin decided, as a part of a reorganization plan, to eliminate fifteen management positions, including the one held by Mr. Bouamama, and to create four Sales Supervisor positions.  Docs. ##95, 109.  The plan was subsequently modified to allow for six Sales Supervisors.  Doc. #97.  Defendant assembled a panel of three employees – Mr. Franklin, Mr. Villeneuve, and Ms. Heather Slezak, Defendant's Director of Human Resources – to interview candidates for the six newly created positions.  *Id*.  Mr. Bouamama was interviewed on April 9, 2003, but was not selected.  *Id*.

Thereafter, Robert Parsons, founder and chief executive of Defendant, indicated to Mr. Bouamama that he may be able to perform "some statistical analysis" for the company.  Docs. ##95 at 8, 109 at 20.  This opportunity never materialized and Mr. Bouamama's employment relationship with Defendant ended on or around April 17, 2003.  Doc. #95.

On April 29, 2003, Mr. Bouamama filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Doc. #108.  On September 30, 2004, the EEOC filed a complaint against Defendant, alleging that Mr. Bouamama was discriminated against on the basis of his religion (Muslim) and national origin (Moroccan).  Doc. #1.[2]

---

[2] With respect to national origin, Plaintiff alleged in its complaint that Mr. Bouamama was discriminated against on the basis of his "Moroccan/Middle Eastern" national origin.

1   Plaintiff specifically contends that Defendant failed to promote Mr. Bouamama to a Sales

2   Supervisor position, terminated him, and retaliated against him in violation of Title VII of

3   the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991.  *Id.*  Plaintiff's

4   complaint seeks to correct Defendant's unlawful employment practices and obtain

5   appropriate relief for Mr. Bouamama.  *Id.*

6        On December 13, 2004, Defendant filed an answer denying that it engaged in any

7   unlawful conduct with respect to Mr. Bouamama.  Doc. #6.  Defendant seeks summary

8   judgment on the discrimination and retaliation claims asserted by Plaintiff.  Doc. #94.

9   Plaintiff has filed a motion for partial summary judgment asking the Court to rule as a matter

10  of law that Defendant violated Title VII's record-keeping requirements, that the claims

11  complied with the applicable statute of limitations, and that Mr. Bouamama exhausted his

12  administrative remedies.  Doc. #97.

13       Summary judgment is appropriate if the evidence, viewed in the light most favorable

14  to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and

15  that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see*

16  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "Only disputes over facts that might

17  affect the outcome of the suit . . . will properly preclude the entry of summary judgment."

18  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The disputed evidence must be

19  "such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.

20  Summary judgment may be entered against a party who "fails to make a showing sufficient

21  to establish the existence of an element essential to that party's case, and on which that party

22  will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

23  / / /

24  */ / /*

25

26  Doc. #1 at 1.  In its subsequent materials, Plaintiff appears to have abandoned its claim that
27  Mr. Bouamama was discriminated against because he was Middle Eastern.  Accordingly, the
    Court will not evaluate the national origin claims to the extent they are based on Mr.
28  Bouamama's Middle Eastern descent.

1  **II.     Defendant's Motion for Summary Judgment.**

2       **A.     Failure to Promote.**

3       The legal framework for a case of employment discrimination under Title VII is the

4  burden-shifting regime of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See*

5  Docs. ##94, 108.  To establish a *prima facie* failure to promote claim, Plaintiff must

6  demonstrate that (1) Mr. Bouamama belongs to a protected class, (2) he applied and was

7  qualified for the position he was denied, (3) he was rejected despite his qualifications, and

8  (4) Defendant filled the position in question with employees not of his class.  *See*

9  *Dominguez-Curry v. Nev. Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir. 2005) (citing

10 *McDonnell Douglas*, 411 U.S. at 802).

11      If Plaintiff succeeds in establishing a *prima facie* case, the burden of production shifts

12 to Defendant "to articulate a legitimate, nondiscriminatory reason for [Mr. Bouamama's]

13 rejection."  *Warren v. City of Carlsbad*, 58 F.3d 439, 442 (9th Cir.1995); *see Lyons v.*

14 *England*, 307 F.3d 1092, 1117 (9th Cir. 2002).  If Defendant articulates such a reason,

15 Plaintiff must produce evidence that the reason was pretextual.  *See Godwin v. Hunt Wesson*,

16 *Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890

17 (9th Cir. 1994)).  Plaintiff may do so by presenting either direct or indirect evidence of

18 pretext.  *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002).

19      Defendant appears to concede that Plaintiff can establish a *prima facie* case with

20 respect to this claim.  *See* Doc. #94.  According to Defendant, the legitimate, non-

21 discriminatory reasons why Mr. Bouamama was not selected for a Sales Supervisor position

22 are Mr. Bouamama's "poor interview and [his] difficulties interacting with other employees

23 and customers, as compared to the successful candidates."  Doc. #95 ¶45 at 7.  Defendant

24 argues that Plaintiff is unable to rebut these reasons in part because comments uttered by Mr.

25 Franklin and Mr. Villeneuve are insufficient to establish pretext.  Doc. #94.

26           **1.     Comment by Mr. Franklin.**

27      Mr. Bouamama declared the following under oath:

28      Right before the interviews, Craig Franklin walked into my office and asked

me where I was from and if my religion was Muslim.  When I replied that I was Moroccan and Muslim, Mr. Franklin responded, "You're lucky that I like you" and walked away.

Doc. #109, Ex. A ¶13 at 2-3.

"Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer."  *Dominguez-Curry*, 424 F.3d at 1038 (quoting *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005)).  Mr. Franklin's comment, construed in Plaintiff's favor, reveals a discriminatory attitude towards Moroccans and/or Muslims.  As the Ninth Circuit noted of other implicitly discriminatory comments:

> There are no talismanic expressions which must be invoked as a condition-precedent to the application of laws designed to protect against discrimination. The words themselves are only relevant for what they reveal – the intent of the speaker.  A reasonable jury could find that statements like the ones allegedly made in this case send a clear message and carry the distinct tone of racial motivations and implications. They could be seen as conveying the message that members of a particular race are disfavored and that members of that [protected class] are, therefore, not full and equal members of the workplace.

*McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1117 (9th Cir. 2004) (quoting *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1083 (3d Cir. 1996)).

Mr. Franklin's question was not provoked by some other circumstance, such as Mr. Bouamama's speaking French with a customer, or by a business purpose, such as an inquiry into whether Mr. Bouamama's language skills could be useful in reviewing Arabic-language web sites.  *See* Doc. #95.  Mr. Franklin asked about Mr. Bouamama's religion and national origin without any related conversation, and then walked away.  In addition, the question was asked shortly before Plaintiff's interview for the Sales Supervisor position, suggesting that it might be related in some way to the interview.  And of the three panelists serving on the interview committee, Mr. Franklin had, in the words of Mr. Villeneuve, the "ultimate authority" to hire the Sales Supervisors.  Doc. #109, Ex. C at 138.  Thus, Mr. Franklin's views of Moroccans and/or Muslims could have influenced the ultimate determination regarding Mr. Bouamama's candidacy.

Defendant argues that Mr. Franklin's comment is "ambiguous" and "unrelated" to employment decisions concerning Mr. Bouamama.  Doc. #112 at 2-3.  At this stage,

- 5 -

however, the Court must view the evidence and draw reasonable inferences in favor of Plaintiff.  Given Mr. Franklin's authority on the panel and the proximity in time to the interviews, as well as the negative religious and national-origin nature of his comment, the Court concludes that a reasonable jury could find that this statement reflected a discriminatory animus that influenced the panel's decision. *See Dominguez-Curry*, 424 F.3d at 1038 ("Where a decisionmaker makes a discriminatory remark against a member of the plaintiff's class, a reasonable factfinder may conclude that discriminatory animus played a role in the challenged decision.").

### 2.    Comments by Mr. Villeneuve.

Comments made by Mr. Villeneuve are also relevant.  Mr. Bouamama's former co-worker testified that Mr. Villeneuve said, in the context of a discussion of terrorism, that "[w]e should bomb all the Rag Heads[.]"  Doc. #109, Ex. L at 64.  The use of the term "rag head" is probative of discriminatory treatment. *See Bains LLC v. Arco Prods. Co.*, 405 F.3d 764, 774 (9th Cir. 2005).  In addition, Mr. Bouamama testified that Mr. Villeneuve said "Muslims deserve to die" and that a "Muslim bastard needs to die."  Doc. #109, Ex. B at 99.  The Court finds these remarks to be analogous to several Ninth Circuit cases in which the court identified direct evidence of discriminatory animus from an employer's comments and reversed the lower court's grant of summary judgment for the employer. *See, e.g.*, *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1128 (9th Cir. 2000) (holding that a decisionmaker's remark that "'two Chinks' in the department were more than enough" served as "strong evidence of discriminatory animus on the basis of national origin"); *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1150 (9th Cir. 1997) (finding direct evidence of race discrimination where employer called a Mexican-American employee a "dumb Mexican"); *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991) (finding direct evidence of sex stereotyping where employer called female instructor "an old warhorse").

Defendant argues that the "rag head" statement was not heard by Mr. Bouamama and was made "after-hours, away from the workplace at a party[.]"  Doc. #112 at 3.  The fact that Mr. Villeneuve's comment was made outside the presence of Mr. Bouamama might be

1    relevant to whether it created a hostile work environment – which is not asserted by Plaintiff

2    in this case – but it does not defeat its relevance to discriminatory animus.  *See Coghlan*, 413

3    F.3d at 1095 n.6 (stating that even if an employer does not target his remarks directly at the

4    plaintiff, "when evidence establishes the employer's animus toward the class to which the

5    plaintiff belongs, the inference to the fact of discrimination against the plaintiff is sufficiently

6    small that we have treated the evidence as direct") (quoted in *Dominguez-Curry*, 424 F.3d

7    at 1038).  Moreover, Mr. Villeneuve, as a member of the interview panel, was in a position

8    where his discriminatory attitude could have influenced the employment decision, even if it

9    ultimately rested with Mr. Franklin.  *See Dominguez-Curry*, 424 F.3d at 1040 ("Where, as

10   here, the person who exhibited discriminatory animus influenced or participated in the

11   decisionmaking process, a reasonable factfinder could conclude that the animus affected the

12   employment decision.").  This is true even if Mr. Villeneuve did not share his comment with

13   other panel members.  *Id.* (citing *Lam v. Univ. of Haw.*, 40 F.3d 1551, 1560 (9th Cir.1994)

14   (finding that the a hiring process is "not insulated from the illegitimate biases of faculty

15   members" and that on a panel of fifteen decisionmakers "even a single person's biases may

16   be relatively influential")).

17        The record includes contradictory evidence as to whether Mr. Villeneuve knew or had

18   reason to know that Mr. Bouamama was a Muslim.  On one hand, "[s]hortly after he was

19   hired," Mr. Bouamama informed Mr. Villeneuve that he was Moroccan and Muslim.

20   Doc. #95 at 3.  On the other, Mr. Villeneuve testified that he could not say whether, at the

21   time of the Sales Supervisor hiring process, he knew that Mr. Bouamama was Muslim.

22   Doc. #109, Ex. C.  This factual dispute must be resolved by the jury.

23        In summary, the Court concludes that the evidence of discriminatory statements by

24   Franklin and Villeneuve is sufficient to defeat summary judgment.  *See Dominguez-Curry*,

25   424 F.3d at 1039 (noting that the Ninth Circuit has "repeatedly held that a single

26   discriminatory comment by a plaintiff's supervisor or decisionmaker is sufficient to preclude

27   summary judgment for the employer"); *Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir.

28   1991) ("[B]ecause of the inherently factual nature of the inquiry, the plaintiff need produce

1  very little evidence of discriminatory motive to raise a genuine issue of fact.").

2    **B.    Termination.**[3]

3    To establish a *prima facie* case of discriminatory termination, Plaintiff must

4  demonstrate that Mr. Bouamama was (1) a member of a protected class, (2) performing his

5  job satisfactorily, (3) terminated, and (4) replaced with employees not of his class with equal

6  or inferior qualifications.  *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir.

7  2000) (citing *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1997)).

8              **1.    Similarly Situated Individuals.**

9    Defendant argues that Plaintiff cannot establish the final element of its *prima facie*

10  case.  Doc. #94 at 13.  Fourteen candidates applied for the Sales Supervisor position,

11  including Mr. Bouamama.  Doc. #95.  Six were selected (Stroh, MacNevin, DeStefano,

12  Morgan, Wong, and Baumgartner).  Doc. #109.  Plaintiff has presented evidence that none

13  of the six was Moroccan or Muslim.  *Id.*  This evidence is sufficient to survive summary

14  judgment.  *See Wallis*, 26 F.3d at 889 (noting that for purposes of summary judgment, "the

15  requisite degree of proof necessary to establish a *prima facie* case . . . is minimal[.]").

16    Defendant additionally argues that Mr. Bouamama was offered more opportunities

17  than other unsuccessful candidates.  Doc. #94.  To the extent Defendant contends that the

18  sales representative position serves as an additional opportunity, according to Defendant each

19  of the unsuccessful candidates, including Mr. Bouamama, was offered this position.  *Id.*  To

20  the extent Defendant claims that the statistical analyst position represents an additional

21  opportunity, Mr. Bouamama declared that this position was not offered to him and Mr.

22  Parsons testified that the position as well as the business intelligence department housing it

23  did not even exist at the time.  Doc. #109, Exs. A, O.  Construing the evidence in Plaintiff's

24  favor, the Court cannot conclude that these positions provided Mr. Bouamama with

25  additional opportunities such that Plaintiff is unable to establish its *prima facie* case.

26

27    [3] Defendant moves for summary judgment on Plaintiff's constructive discharge claim.

28  Plaintiff has abandoned this claim.  Doc. #108 at 13 n.7.  Defendant's motion on this issue
will therefore be granted.

1        **2.      Pretext.**

2        Defendant states that its legitimate, non-discriminatory reason for "firing" Mr.

3   Bouamama is that the interview "panel reasonably believed that Bouamama had rejected the

4   offer of returning to a sales representative position." Doc. #94 at 10.  Relying on *Villiarimo*,

5   Defendant argues that for Plaintiff to rebut this reason, it "must do more than argue that

6   Bouamama did not actually reject the sales representative position," but must specifically

7   show that "the panel did not honestly believe that Bouamama had rejected the offered sales

8   representative position." *Id.* (emphasis omitted).  For the reasons described above, however,

9   the evidence viewed in Plaintiff's favor raises questions of fact as to whether the view the

10  of interview panel, which included Mr. Franklin and Mr. Villeneuve, was held in good faith

11  or reflected discriminatory animus.

12       **C.      Retaliation.**

13       Title VII "prohibits retaliation against an employee 'because he has opposed any

14  practice made an unlawful employment practice'" by Title VII.  *Nelson v. Pima Cmty.*

15  *College*, 83 F.3d 1075, 1082 (9th Cir. 1996) (quoting 42 U.S.C. § 2000e-3(a)).  To make a

16  *prima facie* case of unlawful retaliation, Plaintiff must produce evidence that (1) Mr.

17  Bouamama engaged in an activity protected by Title VII, (2) Defendant subjected him to a

18  to a material adverse action, and (3) there was a causal link between the protected activity

19  and the adverse action.  *See Burlington N. & Santa Fe Ry. Co. v. White*, No. 05-259, 2006

20  WL 1698953, *10 (S. Ct. June 22, 2006); *see also Vasquez v. County of L.A.*, 349 F.3d 634,

21  642 (9th Cir. 2004); *Lyons*, 307 F.3d at 1118.

22       **1.      Protected Activity.**

23       Defendant argues that Mr. Bouamama did not engage in a protected activity.

24  Doc. #94.  According to Defendant, while Mr. Bouamama informed Ms. Slezak about

25  conversations in which Mr. Franklin inquired into Mr. Bouamama's national origin and

26  religion, Mr. Bouamama "did not tell Slezak that he felt he had been discriminated against

27  or express any fear that Franklin would discriminate against him in the future." *Id.* at 12.

28       In the Ninth Circuit, opposition to discriminatory conduct is to be liberally construed

1   to effectuate the purpose of Title VII.  *See Learned v. City of Bellevue*, 860 F.2d 928, 932

2   (9th Cir. 1988); *see also Wallis*, 26 F.3d at 889.  Mr. Bouamama testified that he told Ms.

3   Slezak – Defendant's Director of Human Resources – that he objected to the repeated

4   questions regarding his race, religion, accent, and where he was from.  Doc. #109, Ex. B at

5   126, 189-190.  He further testified that "I let her [Ms. Slezak] know that . . . this is not right,"

6   that "I did not feel . . . [it was] appropriate," and that "I felt that somebody should know

7   about it."  *Id.* at 126, 189.  Viewed in Plaintiff's favor, a reasonable jury could conclude from

8   this evidence that Defendant knew Mr. Bouamama objected to repeated inquiries about his

9   race, religion, and national origin.

10   Defendant claims that this case is analogous to *Pool v. Vanrheen*, 297 F.3d 899 (9th

11   Cir. 2002), and that the same result should obtain here.  *Pool*, however, concerned a letter

12   to a newspaper editor that complained of a "good old boy" atmosphere in a sheriff's office

13   and discussed the need for diversity in that office.  The Ninth Circuit held that "[a]lthough

14   it is a close call, the letter is more aptly characterized as addressing a matter of public

15   concern than as a personal employment grievance." *Id.* at 907.  Here, Mr. Bouamama did not

16   assert a public complaint in a newspaper.  He addressed a matter of discriminatory concern

17   internally, to Defendant's Director of Human Resources.

18   **2.    Causal Link.**

19   Defendant further argues that the causal link between the protected activity and Mr.

20   Bouamama's termination was severed by the "opportunity to apply for another position after

21   he unsuccessfully bid for the Sales Supervisor position." Doc. #94 at 13 (emphasis omitted).

22   As noted above, however, there is a genuine issue of material fact as to whether the statistical

23   analyst position was offered and available to Mr. Bouamama.

24   **3.    *Per Se* Retaliation.**

25   Plaintiff contends that Defendant's presentation of a severance package that contained

26   "a waiver of the right to file a charge of discrimination constitutes a per se violation of the

27   prohibition against retaliation created by Title VII and inherent in public policy." Doc. #108

28   at 11.  But Plaintiff has failed to provide any authority indicating that *per se* retaliation is

1    recognized in this circuit.  Doc. #94.  In the absence of such controlling authority, and in

2    light of the Ninth Circuit's refusal to establish a different *per se* rule in Title VII retaliation

3    claims, *see Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003), the Court

4    declines Plaintiff's invitation to establish a *per se* rule in this specific context.

5                          **D.    Punitive Damages.**

6          For Defendant to be liable for punitive damages under Title VII, Plaintiff must show

7    that it acted "with 'malice or with reckless indifference *to [Mr. Bouamama's] federally*

8    *protected rights*.'" *Kolstad v. Am. Dental Ass'n.*, 527 U.S. 526, 535 (1999) (emphasis in

9    original) (quoting 42 U.S.C. § 1981a(b)(1)).  "The terms 'malice' or 'reckless indifference'

10   pertain to [Defendant's] knowledge that it may be acting in violation of federal law, not its

11   awareness that it is engaging in discrimination." *Kolstad*, 527 U.S. at 535; *see Ngo v. Reno*

12   *Hilton Resort Corp.*, 140 F.3d 1299, 1304 (9th Cir. 1998) ("[T]o be entitled to an award of

13   punitive damages, the plaintiff must demonstrate that the defendant 'almost certainly knew

14   that what [it] was doing was wrongful and subject to punishment.'") (citation omitted).

15         Defendant moves for summary judgment with respect to its "affirmative defense that

16   it made good faith efforts to comply with Title VII."  Doc. #94 at 16.  The Supreme Court

17   has stated that "[w]here an employer has undertaken . . . good faith efforts at Title VII

18   compliance, it 'demonstrat[es] that it never acted in reckless disregard of federally protected

19   rights.'" *Kolstad*, 527 U.S. at 544 (quoting *Kolstad v. Am. Dental Ass'n*, 139 F.3d 958, 947

20   (D.C. Cir. 1998) (Tatel, J., dissenting)).[4]

21         As evidence of its good faith efforts, Defendant claims that it adopted an equal

22   employment opportunity ("EEO") policy that existed before February 13, 2003.  Docs. ##94,

23   112.   When asked whether Defendant had an EEO policy before this date, however,

24   Defendant's Director of Human Resources testified that she did not believe so.  Doc. #109,

25

26   ────────────────

27        [4] Defendant appears to suggest that Plaintiff must disprove good faith as an element
     of its claim for punitive damages.  Doc. #94 at 16.  But the existence of good faith efforts is
28   an affirmative defense, not an element of a plaintiff's case.  *See Hemmings v. Tidyman's Inc.*,
     285 F.3d 1174, 1197-98 (9th Cir. 2002).

1    Ex. U.  There is a dispute, therefore, as to whether Defendant, founded in 1997 (Doc. #95),

2    was without an EEO policy for the first six years of its existence.  This information is

3    relevant in determining whether Defendant has acted in good faith to comply with Title VII.

4          Moreover, Defendant appears to have instituted several education and training

5    programs after the termination of Mr. Bouamama.  *Id.*  Plaintiff argues that post-termination

6    efforts are "without relevance" (Doc. #108 at 16), while Defendant, citing *Swinton v.*

7    *Potomac Corp.*, 270 F.3d 794 (9th Cir. 2001), claims "an employer's post-litigation efforts

8    are relevant in the *Kolstad* analysis" (Doc. #112 at 11).

9          The Ninth Circuit in *Swinton* took neither approach advanced by the parties:  "We

10   decline to endorse here, in the context of an employment discrimination suit, either the view

11   that such evidence is always relevant, or that it is always irrelevant."  270 F.3d at 814.  The

12   court instead held that district courts have the discretion to allow post-occurrence evidence.

13   *Id.*  In addition, the court noted that a jury may "determine whether the remedial conduct is

14   nothing more than window dressing" or "the jury might also find that such remedial actions

15   were indeed bona fide efforts to repent and to prevent the reoccurrence of similar harassment

16   in the future, thus lessening the need for additional deterrence in the form of punitive

17   damages." *Id.* at 815.  The Court concludes that a jury must decide whether Defendant

18   engaged in good faith efforts to comply with Title VII.

19   **III.    Plaintiff's Motion for Partial Summary Judgment.**

20         **A.    Record-Keeping Violation.**

21         Plaintiff seeks summary judgment on its claim that Defendant violated the record-

22   keeping requirements of Title VII.  Doc. #97 at 2.  The records in question are (1) notes taken

23   during the interview process by Mr. Franklin and Mr. Villeneuve, (2) interview

24   questionnaires given to each of the candidates, (3) an interview schedule which ranked the

25   candidates, and (4) resumes submitted by the candidates.  Docs. ##97, 114.

26         Because Plaintiff did not raise the issue of the questionnaires until its reply brief

27   (*see* Docs. ##97, 114), the Court will not address the issue.  Parties may not raise issues for

28   the first time in reply briefs.  *See Ellingson v. Burlington N., Inc.*, 653 F.2d 1327, 1332

1    (9th Cir. 1981).  As to the remaining documents, the schedule and resumes were ultimately

2    produced to Plaintiff by Defendant.  Doc. #114.  The Court's discussion of records is

3    therefore limited to the interview notes.

4              Defendant argues that Plaintiff's record-keeping claim is a motion for discovery

5    sanctions that violates the Court's Case Management Order.  Doc. #105 at 7.  The Court does

6    not agree.  Plaintiff asserted the record-keeping violation as a claim in its complaint (Doc. #1

7    ¶ 9), and now seeks summary judgment on that claim.

8              Plaintiff asks the Court to draw an adverse inference about the contents of the missing

9    notes, arguing that destruction of the notes implies that they were not favorable to

10   Defendant's position.  The Court concludes, however, that there is genuine dispute of

11   material fact as to whether the notes were destroyed or simply misplaced.  Ms. Slezak, the

12   custodian of the notes, testified that she was aware of the obligation to retain records and that

13   she did in fact retain the notes in a locked file cabinet in her office.  She further testified,

14   however, that she has been unable to find them following a move of her office.  Plaintiff

15   asserts several reasons why the Court should disbelieve this testimony, but these assertions

16   serve only to demonstrate that there is a factual dispute concerning the fate of the notes.

17             "When relevant evidence is lost accidentally or for an innocent reason, an adverse

18   evidentiary inference from the loss may be rejected."  *Med. Lab. Mgmt. Consultants v. Am.*

19   *Broad. Corp.*, 306 F.3d 806, 824 (9th Cir. 2002).  Because the Court cannot conclude as a

20   matter of undisputed fact that the notes were destroyed intentionally rather than lost

21   accidentally, the Court will not grant summary judgment on Plaintiff's claim for an adverse

22   inference.  Nor, in light of this factual dispute, will the Court schedule a hearing to address

23   other remedies that should be imposed for the alleged destruction of the notes.  In preparing

24   their proposed final pretrial order, the parties should address the role of this record-keeping

25   issue at trial.

26             **B.      Statute of Limitations and Exhaustion of Administrative Remedies.**

27             Plaintiff moves for summary judgment with respect to Defendant's affirmative

28   defenses related to the statute of limitations and the exhaustion of administrative remedies.

1   Doc. #94.  Defendant moves for summary judgment to the extent Plaintiff brings claims that

2   are time-barred.

3         Defendant appears to admit that its statute of limitations and exhaustion claims are one

4   and the same: "the 300-day administrative exhaustion requirement has been described as a

5   statute of limitations."  Doc. #105 at 16 (citations omitted).  Defendant further states that

6   these affirmative defenses apply to the extent that Plaintiff is alleging discriminatory conduct

7   that occurred prior to the 300-day period, or July 3, 2002.  *Id.* n.12.  Plaintiff admits that it

8   "has not brought suit on the basis of any discriminatory incidents occurring prior to July 3,

9   2002[.]"  Doc. #114 at 10.  The Court will grant summary judgment for Defendant on any

10  claims arising before July 3, 2002, and for Plaintiff on the time-bar defense for any claims

11  arising after that date.

12  **IV.   Plaintiff's Motion for Leave to Amend Complaint.**

13        Plaintiff seeks leave to amend its complaint to "add the words 'Arab,' 'non-Arab,'

14  [and] 'non-Moroccan'" to sections related to the "national origin allegation."  Doc. #96 at 1.

15  The Case Management Order governing this case set forth the deadline for amending the

16  pleadings, which has passed.  Doc. #10.  Federal Rule of Civil Procedure 16 provides that

17  a scheduling order "shall not be modified except upon a showing of good cause[.]"  Fed. R.

18  Civ. P. 16(b);  *see Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005)

19  ("Courts set [pretrial] schedules to permit the court and the parties to deal with cases in a

20  thorough and orderly manner, and they must be allowed to enforce them, unless there are

21  good reasons not to.").  Good cause exists when a deadline "cannot reasonably be met despite

22  the diligence of the party seeking the extension."  Fed. R. Civ. P. 16 Advisory Comm.'s

23  Notes (1983 Am.); *see Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.

24  1992) ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party

25  seeking the amendment.").

26        In arguing that the motion to amend was made for good cause, Plaintiff contends that

27  the "omission of the word 'Arab' from its complaint . . . is due in part to the lack of clear

28  consensus with respect to the meaning of the terms 'Arab' and 'Middle Eastern,' and the fact

1    that they are frequently used interchangeably." Doc. #102 at 2.  Plaintiff further contends

2    that "for all practical purposes the allegation that Mr. Bouamama was discriminated against

3    because he was an Arab is substantially similar to existing allegations that he was

4    discriminated against because he was Middle Eastern or Moroccan." *Id.* at 4.

5         Any confusion regarding the meaning and use of the terms "Arab" and "Middle

6    Eastern" existed well before the deadline for amending the pleadings in the Case

7    Management Order.  Plaintiff's own intake questionnaire and *United States v. Dunn*, 564

8    F.2d 348, 355 n.17 (9th Cir. 1977), among other items cited by Plaintiff, should have put the

9    EEOC on notice that the terms "Arab" and "Middle Eastern" may be associated with each

10   other, and that therefore "Arab" should have been included in the original complaint.

11        Plaintiff has not demonstrated that its inability to appreciate the confusion regarding

12   these terms should be excused on account of its diligence.  Indeed, in its motion, Plaintiff

13   states candidly (and without any reference to Rule 16(b)) that it "inadvertently omitted the

14   words 'Arab,' 'non-Arab,' [and] 'non-Moroccan' from its initial complaint." Doc. #96 at 3.

15   The Court concludes that Plaintiff has not made an adequate showing of good cause to justify

16   the modification of the Case Management Order.

17   **V.    The Parties' Motions to Strike.**

18        Defendant moves to strike two exhibits from Plaintiff's reply to Defendant's

19   opposition to Plaintiff's motion for leave to amend complaint.  Doc. #117.  Plaintiff asks the

20   Court to strike exhibit H to Defendant's statement of facts in support of its motion for

21   summary judgment.  Doc. #107.  Plaintiff additionally asks the Court to strike new evidence

22   in Defendant's reply in support of its motion for summary judgment.  Doc. #115.  Because

23   the Court did not rely on these exhibits in resolving the issues addressed in this order, the

24   motions to strike will be denied as moot.

25        **IT IS ORDERED:**

26        1.    Defendant's motion for summary judgment (Doc. #94) is **granted** with respect

27   to Plaintiff's constructive discharge claim and any claims arising before July 3, 2002, but

28   otherwise  is **denied**.

2.      Plaintiff's motion for partial summary judgment (Doc. #97) is **granted** with respect to Defendant's time-bar defense concerning claims arising after July 3, 2002, but otherwise is **denied**.

3.      Plaintiff's motion for leave to amend (Doc. #96) is **denied**.

4.      Defendant's motion to strike (Doc. #117) is **denied**.

5.      Plaintiff's motions to strike (Docs. ##107, 115) are **denied**.

6.      The Court will set a final pretrial conference by separate order.

DATED this 27th day of June, 2006.

David G. Campbell
United States District Judge