J. Mark Ogden; AZ Bar No.
mogden@littler.com
R. Shawn Oller; AZ Bar No. 019233
soller@littler.com
LITTLER MENDELSON, PC
2425 East Camelback Road, Suite 900
Phoenix, AZ  85016
Telephone:   602.474.3600
Facsimile:   602.957.1801

Attorneys for Defendant
Go Daddy Software, Inc.

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Go Daddy Software, Inc.,<br><br>　　　　　Defendant. | Case No. CV 04 2062 PHX DGC<br><br>**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(b), AND/OR MOTION FOR NEW TRIAL PURSUANT TO RULE 59(a)** |

## I.      INTRODUCTION

### A.      Rule 50(b) Renewed Motion For Judgment As A Matter of Law.

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, Defendant hereby renews its Motion for Judgment as a Matter of Law on the single claim for which the jury found liability and awarded damages, *i.e.*, the claim that Defendant retaliated against Youssef Bouamama ("Bouamama") when it allegedly terminated his employment on April 17, 2003.  The basis for this Motion is that Plaintiff did not satisfy its burden of proof to establish the necessary elements of its retaliation claim under Title VII.  Based on the instructions presented to the jury, the evidence presented at trial was insufficient to justify a finding of liability or an award of damages, and the jury's finding of liability and damages is inconsistent with the evidence presented at trial.

LITTLER MENDELSON
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

Plaintiff failed to present sufficient evidence for a reasonable trier of fact (1) to determine that Bouamama engaged in protected activity under Title VII to support a retaliation claim, or (2) to determine that a causal connection existed between Bouamama's alleged complaint to Heather Slezak ("Slezak") and his alleged termination. Plaintiff has been fully heard on each of the foregoing issues, and there was no legally sufficient evidentiary basis for a "reasonable jury" to find Plaintiff established the elements of its retaliation claim. As such, Defendant's Renewed Motion for Judgment as a Matter of Law should be granted.

### B.  Motion For New Trial.

Defendant also moves for a new trial, pursuant to Rule 59(a) of the Federal Rules of Civil Procedure. The insufficiency of the evidence requires either a ruling in Defendant's favor as a matter of law or the granting of a new trial on the retaliation claim based on Bouamama's alleged termination. The overwhelming evidence at trial established that Defendant did not retaliate against Bouamama. Finally, a new trial must be granted because the amount of back pay suggested by the jury and amount of punitive damages awarded is not supported by the evidence.

## II.  RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Under Rule 50, "a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000) (*quoting* Fed. R. Civ. P. 50(a)). The standard for granting summary judgment "mirrors" the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Id.* at 150 (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986)). As such, "in entertaining a motion for judgment as a matter of law, the court should review all evidence in the record." *Id.* When evaluating such a motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Id.*

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

### A. The Evidence Presented At Trial Was Insufficient To Demonstrate That Bouamama Engaged In Protected Activity.

The jury was instructed that to find liability for a claim of retaliation, Plaintiff had the burden of proving each of the following elements by a preponderance of the evidence:

1. Mr. Bouamama engaged in or was engaging in an activity protected under federal law, that is, opposing discrimination under Title VII;

2. the employer subjected Mr. Bouamama to an adverse employment action, that is, it . . . terminated his employment; and

3. the protected activity was a substantial or motivating factor in the adverse employment action.

(Jury Instruction No. 12). Plaintiff failed to present sufficient evidence at trial from which a reasonable jury could have found the first required element of Plaintiff's retaliation claim. Indeed, as the first element of Plaintiff's *prima facie* case, Bouamama admitted at trial that he did *not* complain about discrimination while at Go Daddy. Specifically, Bouamama testified on cross-examination:

> Q: Mr. Bouamama, on two different occasions during that interview with Ms. Rojas [the EEOC investigator] you told her that you didn't complain about discrimination while you were at Go Daddy.
>
> A: Yes.

(Day 4, 169:10-13). Thus, within weeks after he left Go Daddy, Bouamama told the EEOC investigator responsible for investigating his particular claim that he had never engaged in protected activity – *i.e.*, never complained about discrimination – while employed at Go Daddy. The jury was not entitled to disregard Bouamama's admission and, therefore, judgment as a matter of law is appropriate. *See, e.g., United States v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1147 (9th Cir. 1998) (judicial estoppel "bars a party from taking inconsistent positions in the same litigation."), *cert. denied*, 525 U.S. 1067 (1999).

Even if the jury were allowed to disregard Bouamama's prior admission to the EEOC and acknowledgement of that admission at trial, Bouamama's alleged complaints were

LITTLER MENDELSON
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

3

insufficient to establish the first element of his *prima facie* case. Plaintiff alleges that Bouamama engaged in protected activity when he "complained" to Heather Slezak on April 4, 2003 that Craig Franklin asked him where he was from and what religion he practiced. This allegation, even if accepted as true, is insufficient as a matter of law. Not every complaint garners its author protection under Title VII. *See EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983). An employee's "complaint" is not "opposed to an unlawful employment practice" for purposes of Title VII "unless it refers to *some* practice by the employer that is allegedly unlawful." *Id.*; *Parker v. Otis Elevator*, 9 Fed. Appx. 615 (9th Cir. 2001) (employee's complaint about romantic relationship between his supervisor and another employee were not "protected activities," where the activities were not prohibited by Title VII). Nothing in the record suggests Bouamama was opposing an unlawful employment practice, *i.e.*, a practice forbidden by Title VII.

According to Bouamama's trial testimony, Franklin saw some photographs that Bouamama kept in his cubicle and asked him about them, including where they were from (Day 4, 47:6-20). After Bouamama said that the photographs were pictures of Morocco, Franklin allegedly asked him, "Are you from Morocco?" and "Are you Muslim?," to which Bouamama replied "Yes" to both questions (*Id.*). Franklin then said, "You know, you're lucky that I like you," and walked away from his desk (*Id.*). Bouamama testified that he complained to Slezak "that people are concerned and taking interest about, you know, where I'm from, my religion." (Day 4, 48:18-20).

Asking where a person is from or what religion they practice, however, is not conduct that is prohibited by Title VII. *See* 42 U.S.C. § 2000e-2(a)(1) (it is unlawful for an employer to *discriminate* against an employee because of the employee's race, color, religion, sex, or national origin); *EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983) ("[A] simple assertion that an employer is personally bigoted, without more, is not statutorily protected opposition to an 'unlawful employment practice.'"); *see also* 29 C.F.R. §§ 1625.4(b), 1625.5 (requesting an individual's age on an employment application, help wanted notices or advertisements is not an ADEA violation). Here, Bouamama did not

LITTLER MENDELSON
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

4

complain to Slezak of any specific activity that he believed to be unlawful, nor did he accuse any specific individual of discriminating against him. Similarly, Bouamama did not complain that Franklin's questions were harassment.[1] Rather, Bouamama complained that he did not like Franklin asking where he was from or what religion he practiced. Though Bouamama may have chafed at Franklin's questions, his complaint to Slezak that Franklin asked him where he was from and what religion he practiced does not constitute protected activity under Title VII.

### B. The Evidence Presented At Trial Was Insufficient To Demonstrate A Nexus Between The Protected Activity And Bouamama's Alleged Termination.

Even if Plaintiff had submitted sufficient evidence that Bouamama engaged in protected activity, Plaintiff failed to present sufficient evidence at trial from which a reasonable jury would have found the third required element of the retaliation claim: a causal connection between Bouamama's protected activity and the adverse employment action, Bouamama's alleged termination.

#### 1. Defendant made the decision to eliminate Bouamama's position *before* he engaged in protected activity, negating any connection between Bouamama's protected activity and his alleged termination.

The Supreme Court has made it clear that "[e]mployers need not suspend previously planned [employment decisions] upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Clark County School Dist. v. Breeden*, 532 U.S. 268, 272 (2001). In *Breeden*, the plaintiff claimed her employer transferred her in retaliation for her filing a Title VII case. Noting that the employer was contemplating the transfer even before the suit was filed, the Supreme Court observed, "Employers need not suspend

---

[1] Indeed, even if Bouamama's "complaint" could be construed as a claim that Franklin was harassing him – which is not supported by the record – such a "harassment complaint" likewise fails to constitute protected activity under Title VII as a matter of law. *See Clark County School Dist. v. Breeden,* 532 U.S. 268, 271 (2001) (no retaliation claim because "no one could reasonably believe that the incident recounted above violated Title VII.").

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

5

previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." 532 U.S. at 272.

The undisputed evidence establishes that Craig Franklin was responsible for eliminating Bouamama's position. Indeed, Franklin testified that he was solely responsible for choosing all of the positions that would be eliminated. Franklin's decision to eliminate Bouamama's position, however, was made *before* Bouamama engaged in any protected activity (Day 2 a.m., 67:6-13, 124:10-12). Bouamama likewise testified that the decision to eliminate his position was made *before* he engaged in any protected activity. Specifically, Bouamama testified that the panel notified him that his position was being eliminated on Friday April 4, 2003. During this meeting, he was given two choices: apply for the new Sales Supervisor position or "walk away." (Day 4, 44:10-19). Bouamama testified that the following day, Franklin asked him where he was from and what religion he practiced (Day 4, 47:2-20). Bouamama made his "complaint" to Slezak later still (Day 4, 48:11-16). In the present case, the fact that Bouamama did not leave Go Daddy until a few weeks later – April 17, 2003 – is "no evidence whatever of causality." *Breeden*, 532 U.S. at 272. Defendant was allowed to proceed along lines previously contemplated, though not yet definitely determined, even after discovering that Bouamama had engaged in protected activity. *Id.*

        **2.    The evidence presented at trial was insufficient to suggest any causal connection between Bouamama's alleged protected activity and the alleged termination.**

In addition, the evidence presented at trial established that Defendant's favorable treatment of Bouamama was an intervening event, negating any causal connection between Bouamama's protected activity and his departure from Go Daddy. The Ninth Circuit has held that intervening, positive treatment by an employer breaks any causal connection between a plaintiff's protected activity and an adverse employment action. *See Ghirmai v. Northwest Airlines, Inc.*, 2005 WL 1154390 (9th Cir. 2005) (*citing Mannat v. Bank of America, N.A.*, 339 F.3d 792, 802 (9th Cir. 2003)); *see also Uhl v. Zalk Josephs Fabricators,*

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

6

*Inc.*, 121 F.3d 1133, 1136 (7th Cir. 1997) (intervening satisfactory evaluation "botches up" causal connection between diabetes diagnosis and subsequent demotion as a matter of law). Here, the evidence of Defendant's favorable treatment of Bouamama is overwhelming.

After Bouamama unsuccessfully applied for the position of Sales Supervisor, Defendant provided him with an opportunity not offered to any other unsuccessful candidate. According to Plaintiff, Bob Parsons personally notified him that he was not getting a Sales Supervisor position (Day 4, 51:4-23). More importantly, Parsons told Bouamama during that meeting that he was going to be doing sales statistics for the company (*Id.*). Parsons told Bouamama that he wanted him to be his "ears and eyes for the company." (*Id.*). According to Bouamama, he liked and trusted Parsons (Day 4, 52:1-8). He and Parsons always had been friendly in the past and Bouamama "only had high respect for Mr. Bob." (Day 4, 52:9-12). Bouamama testified that he felt "great" after the meeting because he was going to be moving to another department (Day 4, 52:20-21, 53:1-10).

The next day, Bouamama met with one of Defendant's Vice Presidents, Barb Rechterman (Day 4, 56:6-11). Rechterman asked Bouamama to complete a report for her and to turn it in by noon (Day 4, 56:22-24). Bouamama conceded that he did not turn in the whole report until 2:30 p.m. (Day 4, 57:2-7). After handing in the report, Bouamama asked Rechterman, "Is that what you were expecting?" to which she replied, "No, no, no." (Day 4, 58:1-9). Rechterman testified that the report she had assigned to Bouamama "just was wrong" and that she told him the project was done incorrectly (Day 5, 22:18-24). Afterwards, Rechterman notified Parsons that "it just wasn't going to work out with Mr. Bouamama in an analytical role." (Day 5, 23:12-15). Plaintiff testified that the following day, he was terminated (Day 4, 139:17-25).

### 3. The evidence presented at trial was insufficient to establish that the decisionmaker responsible for Bouamama's alleged termination was aware that he had engaged in protected activity.

Finally, Plaintiff presented insufficient evidence at trial that the decisionmaker responsible for allegedly terminating Bouamama's employment was aware that he had

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

7

engaged in protected activity.[2] As noted by the Ninth Circuit in *Raad v. Fairbanks Northstar Borough*, 323 F.3d 1185 (9th Cir. 2003), to prevail on the causation element of a retaliation claim, a plaintiff must make an evidentiary showing sufficient for a reasonable trier of fact to infer that the particular decisionmaker who made the adverse employment decision was aware that the plaintiff had engaged in protected activity. *Id.* at 1197. Thus, to prove a causal nexus between Bouamama's protected activity and his alleged termination, Plaintiff was required to present sufficient admissible evidence from which a reasonable jury could infer that the decisionmaker responsible was aware of Bouamama's protected activity. *See also Hayes v. Potter*, 310 F.3d 979, 983 (7th Cir. 2002) (holding that "the decisionmaker must have actual knowledge of the complaint for her decision to be retaliatory."). In this case, Plaintiff failed to present any evidence that Franklin was aware that Bouamama had engaged in protected activity. Here, as in *Breeden*, Franklin decided on a course of action before it could possibly have known about Bouamama's protected activity. Without any evidence that Franklin knew that Bouamama had complained about him, it is simply impossible for Plaintiff to meet the third element of its *prima facie* case. *Id.* at 1197.

## III.  MOTION FOR NEW TRIAL

Alternatively, the Court should grant Defendant's Motion for New Trial pursuant to Rule 59(a). Under Rule 59(a), a trial court should grant a new trial if there are doubts that the verdict is in keeping with the clear weight of the evidence or if the jury appears to have committed a mistake in reaching its verdict. *See Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987). A new trial must also be ordered based on the excessive damages awarded by the jury. Additional general grounds for a new trial are

---

[2] Plaintiff presented no evidence at trial regarding who made the final decision to terminate Bouamama's employment. The undisputed evidence at trial established that Franklin made the decision to eliminate Bouamama's position. However, Bob Parsons subsequently intervened, offering Bouamama a statistical analyst position. After Barb Rechterman told Parsons that Bouamama was not going to work out in that position, Bouamama contends his employment was terminated. Plaintiff presented no evidence which of these three potential decisionmakers made the ultimate decision to terminate Bouamama's position. Regardless, Plaintiff presented no evidence any of these three potential decisionmakers were aware that Bouamama had engaged in protected activity.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

8

that the damages are excessive. *See Hanson v. Shell Oil*, 541 F.2d 1352, 1359 (9th Cir. 1976), *cert. denied*, 429 U.S. 1074 (1977). Unlike a motion for judgment as a matter of law, no presumption in favor of the verdict exists when determining whether a new trial should be granted. *Id.* A trial court should simply weigh the evidence presented and the circumstances of the case in making its determination. *See Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).

As set forth above, the jury's verdict that Defendant retaliated against Bouamama when it terminated his position was not supported by the facts and evidence presented at trial and is contrary to applicable law. The jury's finding that Bouamama engaged in protected activity is unsupported by the facts and the law. The jury's finding of causality was not supported by any evidence because no evidence was presented from which a reasonable jury could determine that the relevant decisionmaker(s) – whomever they might be – had knowledge of Bouamama's protected activity. Moreover, Defendant's favorable treatment of Bouamama, after he engaged in protected activity, negates any inference of retaliation.

A new trial is also proper because the back pay and punitive damages award is not supported by the evidence.[3] The jury awarded Bouamama $135,000.00 in back pay and $250,000.00 in punitive damages. However, Plaintiff presented insufficient evidence to support either of these awards.

Plaintiff bears the burden of proving Bouamama's damages, including back pay. *See Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1158 (9th Cir. 1999); *Horn v. Duke Homes,* 755 F.2d 599, 606 (7th Cir. 1985). These damages cannot be speculative, but must be proved. *See Rodgers v. Fisher Body Division, General Motors Corp.*, 739 F.2d 1102, 1107 (6th Cir. 1984), *cert. denied*, 470 U.S. 1054 (1985). During the trial, Bouamama testified that he estimated that his lost earnings totaled between $120,000.00 and $150,000.00 (Day 4, 72:4-8, 73:6-7). According to Bouamama, his calculation was based solely on his own review of his W-2 forms, which were not admitted into evidence (Day 4,

---

[3] Defendant is aware that the back pay "award" by the jury was not binding, but only an advisory verdict.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

9

71:4-72:1, 72:13-16; 72:25-73:4).  Plaintiff provided no other testimony with respect to Bouamama's back pay calculation.  Therefore, the jury's proposed back pay award of $135,000.00 is not supported by the evidence, is contrary to the law, and a new trial must be granted.

Back pay is determined by measuring the difference between Bouamama's **actual** earnings subsequent to his leaving Go Daddy through trial and his earnings had he remained with Go Daddy.  *See Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1158 (9th Cir. 1999), *quoting*, *Taylor v. Philips Indus. Inc.,* 593 F.2d 783, 786 (7th Cir. 1979) (holding back pay is determined by "measuring the difference between actual earnings for the period and those which [plaintiff] would have earned absent the discrimination by defendant").  Here, Plaintiff failed to provide evidence of either figure – earnings subsequent to leaving Go Daddy or his income had he remained.  Plaintiff's failure to introduce any such evidence renders any back pay award purely speculative and the calculation of a reliable award impossible.  *See Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1158 (9th Cir. 1999) (noting that plaintiff has the burden to prove back pay damages and setting forth the method of calculating back pay).

At trial, Bouamama testified that, following his termination from Defendant, he was hired by Midland Credit Management ("MCM") (Day 4, 174:20-175:1, 186:3-8).  The record, however, is silent with respect to several critical facts, including when Bouamama became employed with MCM or any of the necessary details regarding his employment with MCM, such as wage information, wages earned, hours worked, bonuses received, or any other evidence that would make it possible to determine Bouamama's actual earnings from the time he left Go Daddy until trial.  *Gotthardt*, 191 F.3d at 1158.

In *Taylor v. Philips Indus. Inc.,* the Seventh Circuit reversed an award of back pay where the plaintiff failed to introduce any evidence of actual earnings following her discharge.  593 F.2d. 783, 787 (7th Cir. 1979).  At trial, Ms. Taylor testified she was unable to find "comparable" employment.  *Id.*  Similar to the case at bench, the record in *Taylor* was "totally silent as to whether Ms. Taylor received any wages from employment after her

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

discharge," regardless if it was comparable or not. *Id.* The *Taylor* Court reasoned that "[i]t is only with such information that the trial court can carry out its responsibility to reduce the back pay award by the amount of interim earnings" and, therefore, "the trial court's award of damages cannot stand." *Id.*; *see also Horn v. Duke Homes*, 755 F.2d 599, 607 (7th Cir. 1985) (evidence of actual earnings received during the relevant time period must be deducted in order to arrive at the appropriate figure for back pay). Plaintiff's failure to introduce evidence of Bouamama's actual earnings following his departure from Go Daddy renders a back pay calculation purely speculative.

In addition, it is undisputed that Bouamama's position as Inbound Sales Manager was permanently eliminated, the elimination of which was unrelated to Bouamama's claim of retaliation (Day 4, 44:10-19, 45:14-46:1). Presumably, Plaintiff assumes that because Bouamama earned $46,000.00 per year as an Inbound Sales Manager, he could have continued to earn that amount if he had remained with Go Daddy (Day 4, 36:8-16). This is unsupported by the record. The undisputed evidence established that Bouamama was not going to remain an Inbound Sales Manager earning $46,000.00 per year under any circumstances (Day 4, 44:10-19, 45:14-46:1). Plaintiff, therefore, cannot rely on Bouamama's salary as an Inbound Sales Manager to determine the amount Bouamama would have earned. Plaintiff's failure to introduce any wage information for a position Bouamama would have accepted, and in which he could have been placed after his position was eliminated, proves fatal to its request for back pay. *See Akouri v. State of Florida Dep't of Transportation* 408 F.3d 1338, 1344 (11th Cir. 2005) (holding "it is elementary that a plaintiff must, at a minimum, show his earnings during his employment before a reasonable jury can begin a calculation of a back-pay award."). Here, again, Plaintiff failed to introduce at trial the necessary evidence on which to base a back pay calculation. Bouamama's position as Inbound Sales Manager was eliminated *before* he engaged in protected activity. Plaintiff introduced no evidence of what compensation Bouamama would have been paid following the elimination of that position and, therefore, the jury's advisory verdict – as well as any back pay calculation – cannot be unsupported by the record.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

Likewise, the jury's award of punitive damages is unsupported by the evidence at trial. Title VII "limits compensatory and punitive damages to cases of 'intentional discrimination' – that is, cases that do not rely on the 'disparate impact' theory of discrimination." *Kolstad v. Am. Dental Ass'n.*, 527 U.S. 526, 534 (1999); 42 U.S.C. § 1981a(a)(1). Section 1981a(b)(1) further qualifies the availability of punitive damages:

> A complaining party may recover punitive damages awards under this section against a respondent . . . if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."

42 U.S.C. § 1981a(b)(1). As the Supreme Court noted:

> The very structure of § 1981a suggests a congressional intent to authorize punitive damages in only a ***subset of cases*** involving intentional discrimination. Section 1981a(a)(1) limits compensatory and punitive damages to instances of intentional discrimination, while 1981a(b)(1) requires plaintiffs to make an additional "demonstrat[ion]" of their eligibility for punitive damages. ***Congress clearly sought to impose two standards of liability – one for establishing a right to compensatory damages and another, higher standard that a plaintiff must satisfy to qualify for a punitive award.***

*Kolstad*, 527 U.S. at 534 (emphasis added). Thus, punitive damages are not appropriate in all cases of intentional discrimination nor a majority of cases but, instead, are only available in a "subset of cases" when a "higher standard" than intentional discrimination is met. To meet this higher standard, the plaintiff must prove that the employer acted with "malice or with reckless indifference *to the [plaintiff's] federally protected rights*." *Id.* at 535 (emphasis added). That is, "an employer must at least discriminate in the face of a perceived risk that its action will violate federal law to be liable in punitive damages." *Id.* at 536. Where the plaintiff proves intentional discrimination, but fails to meet the higher standard for punitive damages, punitive damages should not be awarded. *See Wirtz v. Kansas Farm Bureau Serv. Inc.,* 311 F. Supp. 2d 1197 (D. Kan. 2004); *Sackett v. ITC DeltaCom, Inc.*, 374 F. Supp. 2d 602 (E.D. Tenn. 2005).

LITTLER MENDELSON
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

12

The facts of *Wirtz* are instructive. There, a jury found that the defendant intentionally discriminated against the plaintiff on the basis of his gender in violation of Title VII and awarded him $20,000 in punitive damages. The trial court upheld the finding of intentional discrimination, but vacated the award of punitive damages. Citing *Kolstad*, the trial court determined that the plaintiff failed to present evidence showing that the defendant acted with malice or reckless disregard for his federally protected rights. In opposition, the plaintiff argued that it had "presented evidence that defendant's representatives knew the law, they knew they could not discriminate against plaintiff because of his gender and did so in reckless disregard for [plaintiff's] protected federal rights." *Id.* at 1222. The trial court held that this statement was not, by itself, evidence of any particular action that defendant's management took in the face of a perceived risk of violating plaintiff's rights:

> There was simply no evidence presented at trial showing that defendant's management employees possessed the requisite state of mind to justify the imposition of punitive damages. By contrast, throughout trial defendant's management employees testified about their desire to help plaintiff work through the difficult period in his personal and professional life.

*Id.* The trial court noted that *Wirtz* was a "clear example of a situation in which a plaintiff suffered from intentional discrimination, but the defendant did not possess the requisite mental state for the imposition of punitive damages." *Id.*

Similar to *Wirtz*, Plaintiff in the present case did not present any evidence that Go Daddy's management employees acted either maliciously or recklessly in response to Bouamama's alleged "complaint" to Slezak. In fact, the evidence demonstrates just the opposite. As noted above, *after* Bouamama allegedly complained to Slezak, he was treated *more* favorably than other employees. For example, Bouamama purportedly engaged in protected activity, and after he did not receive a Sales Supervisor position, Defendant provided him with an opportunity not offered to any other unsuccessful candidate. According to Bouamama's own testimony, Parsons personally notified him that he did not get a Sales Supervisor position (Day 4, 51:4-23). More importantly, Parsons told Bouamama during that meeting that he was going to be doing sales statistics for the company (*Id.*).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

13

Parsons told Bouamama that he wanted him to be his "ears and eyes for the company." (*Id.*). According to Bouamama, he liked and trusted Parsons (Day 4, 52:1-8). He and Parsons always had been friendly in the past and Bouamama "only had high respect for Mr. Bob." (Day 4, 52:9-12). Bouamama testified that he felt "great" after the meeting because he was going to be moving to another department, doing statistics (Day 4, 52:20-21, 53:1-10).

The next day, Bouamama met with one of Defendant's Vice Presidents, Barb Rechterman (Day 4, 56:6-11). Rechterman asked Bouamama to complete a report for her and to turn it in by noon (Day 4, 56:22-24). Bouamama conceded that he did not turn in the whole report until 2:30 p.m. (Day 4, 57:2-7). After handing in the report, Bouamama asked Rechterman "is that what you were expecting?" to which she replied "No, no, no." (Day 4, 58:1-9). Rechterman testified that the report she had assigned to Bouamama "just was wrong" and that she told him the project was done incorrectly (Day 5, 22:18-24). Afterwards, Rechterman notified Parsons that "it just wasn't going to work out with Mr. Bouamama in an analytical role." (Day 5, 23:12-15). Bouamama testified that he was terminated the following day (Day 4, 139:17-25).

Parsons testified that he was not concerned about litigation, it being the "furthest thing" from his mind (Day 5, 303:8-10). Likewise, Rechterman testified that the possibility of litigation "never crossed [her] mind." (Day 5, 25:7-9). Despite several opportunities, Bouamama never complained of retaliation to either of them. In fact, neither Parsons nor Rechterman were aware that Bouamama had even engaged in a protected activity (Day 4, 296:4-5; 304:2-3; 305:17-16; 305:22-24; 306:15-16; Day 5, 25:20-4). Based on the evidence presented, it is clear that Plaintiff failed to meet its burden to establish the requisite mental state for punitive damages.

**IV.  THE JURY'S AWARD OF COMPENSATORY AND PUNITIVE DAMAGES ARE SUBJECT TO TITLE VII'S STATUTORY CAP AND, THEREFORE, MUST BE REDUCED.**

As part of its verdict, the jury awarded Bouamama $5,000.00 and $250,000.00 in compensatory and punitive damages, respectively, for a combined award of $255,000.00. Under 42 U.S.C. § 1981a, however, "[t]he sum of the amount of compensatory damages

A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

14

awarded ... for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded ... shall not exceed" $200,000 against a defendant, such as Go Daddy, who has more than 200 and fewer than 501 employees.  *See* 42 U.S.C. § 1981a(b)(3)(C).

At trial, the evidence established that Go Daddy had "just over 200" employees at the time that Bouamama left Go Daddy in April of 2003 (Day 2, 133:20-23).  Because the statutory cap for compensatory and punitive damages under Title VII is $200,000.00 for employers who have more than 200 and fewer than 501 employees, the Court should reduce the jury's award of $255,000.00 in compensatory and punitive damages to $200,000.00.

## V.   CONCLUSION

Based on all of the above, Defendant respectfully requests that this Court grant its Motion for Judgment as a Matter of Law or, in the alternative, Defendant's Motion for New Trial on Plaintiff's claim of retaliation, back pay, and punitive damages award.

RESPECTFULLY SUBMITTED this 26th day of January, 2007.

                                */s/   R. Shawn Oller*
                                J. Mark Ogden
                                R. Shawn Oller
                                LITTLER MENDELSON, P.C.
                                Attorneys for Defendant
                                Go Daddy Software, Inc.

I hereby certify that I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following if CM/ECF registrants, and mailed a copy of same to any non-registrants this 26th day of January, 2007, to:

Mary Jo O'Neill, Esq.
P. David Lopez, Esq.
Lucila G. Rosas, Esq.
Equal Employment Opportunity Commission
3300 North Central Avenue, Suite 690
Phoenix, AZ  85012-9688
Attorneys for Plaintiff

  *s/ Jaye Sanschagrin*

Firmwide:81919695.1 048902.1002

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600