**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission, | No. CV 04-2062-PHX-DGC |
| Plaintiff, | |
| vs. | **ORDER** |
| Go Daddy Software, Inc., | |
| Defendant. | |

On December 15, 2006, the jury returned a verdict in Plaintiff's favor on a Title VII retaliation claim and awarded $5,000 in compensatory damages, $250,000 in punitive damages, and an advisory verdict of $135,000 in back pay. Defendant has filed a Motion for Judgment as a Matter of Law Pursuant to Rule 50(b), and/or Motion for New Trial Pursuant to Rule 59(a). Dkt. #196. Plaintiff has filed a Motion Regarding Back Pay, Record Keeping and Equitable Relief. Dkt. #197. For the reasons set forth below, the Court will grant Defendant's motion with respect to the statutory cap on compensatory and punitive damages, deny the remainder of Defendant's motion, and grant Plaintiff's motion in part.

**I.    Defendant's Motion.**

   **A.    Motion for Judgment as a Matter of Law – Protected Activity.**

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, Defendant asks the Court to grant judgment in its favor on Plaintiff's retaliation claim. Defendant first argues

that the evidence presented at trial was insufficient to demonstrate that Youseff Bouamama engaged in protected activity. Dkt. #196 at 3-5.

Defendant made a Rule 50(a) motion at the close of the evidence. Although Defendant asked the Court to enter judgment as a matter of law on Plaintiff's retaliation claim, Defendant did not argue that the motion should be granted because Plaintiff failed to present sufficient evidence of a protected activity. The sole basis for Defendant's motion was that Plaintiff had failed to present evidence that Ms. Slezak told other members of the promotion panel (Mr. Franklin and Mr. Villeneuve) about Plaintiff's discrimination complaints. Transcript, 12-15-06 at 140-41. "A party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *Freund v. Nycomed Amersham,* 347 F.3d 752, 761 (9th Cir. 2003). Because Defendant failed to argue that Plaintiff had presented insufficient evidence of a protected activity, Defendant may not make that argument now. *Id.*

**B.    Motion for Judgment as a Matter of Law – Insufficient Evidence of Nexus.**

Defendant argues that Plaintiff failed to present sufficient evidence that Mr. Bouamama's termination was caused by retaliation for his protected activity. In ruling on this argument, the Court must apply the same standard as it would in granting summary judgment. Judgment may be entered for Defendant only if Plaintiff failed to present sufficient evidence for a reasonable jury to rule in Plaintiff's favor. In making this determination, "the court must draw all reasonable inferences in favor of [Plaintiff], and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Defendant first argues that Plaintiff failed to prove causation because the decision to eliminate Mr. Bouamama's position was made before he engaged in any protected activity. Defendant next argues that any causal link between Mr. Bouamama's protected activity and his termination was broken by Mr. Parson's offer of an opportunity to qualify for an analyst

1  position. Because Defendant failed to make these arguments in its Rule 50(a) motion at the
2  close of the evidence, it cannot make them now. *Freund,* 347 F.3d at 761.[1]

3  Defendant also argues that Plaintiff presented insufficient evidence that the decision-
4  maker responsible for terminating Mr. Bouamama was aware of his protected activity. The
5  Court disagrees. Mr. Bouamama testified that he was terminated by Mr. Franklin and Ms.
6  Slezak. He also testified that he complained to Ms. Slezak about discriminatory conduct by
7  Mr. Franklin only days before his termination. Viewing the evidence in the light most
8  favorable to Plaintiff and drawing all reasonable inferences in its favor, the Court concludes
9  that the jury reasonably could have found that both Mr. Franklin and Ms. Slezak were aware
10 of the protected activity and that their termination of Mr. Bouamama was in response to that
11 activity.

**C.   Motion for New Trial Based on the Weight of the Evidence.**

13 Defendant asks the Court to grant a new trial under Rule 59(a) because the jury's
14 verdict is against the clear weight of the evidence. The Ninth Circuit has provided the
15 following guidance for ruling on such a motion:

> "a decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter. . . . If, having given full respect to the jury's findings, the judge on the

---

[1] Defendant did not make these arguments in its Rule 50(a) motion, but it did argue that Plaintiff had failed to prove a connection between the protected activity and Mr. Bouamama's termination. Even if the Court were to take a liberal view of Defendant's Rule 50(a) motion, however, these arguments are not well-taken. First, as Plaintiff correctly notes, the jury found that Defendant's retaliation resulted in Mr. Bouamama's termination, not in the elimination of his position as Inbound Sales Manager. Defendant presented no evidence that the decision to terminate Mr. Bouamama was made before he engaged in protected activity. Indeed, Defendant claimed that Mr. Bouamama was not terminated at all. Second, whether any causal link between the protected activity and the termination was broken by Mr. Parson's offer of an analyst position was a question of fact for the jury to decide. The jury clearly chose to disbelieve Defendant's assertion that it did not terminate Mr. Bouamama, and also could reasonably have chosen to disbelieve Defendant's assertion that Mr. Bouamama genuinely was offered an opportunity to qualify for an analyst position. The jury also could have concluded that Mr. Franklin and Ms. Slezak decided to terminate Mr. Bouamama as a result of his protected activity regardless of the analyst opportunity.

> entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that he will grant a new trial."

*Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987) (*citing* C. Wright & A. Miller, *Federal Practice and Procedure* § 2806, at 48-49 (1973)).

Having considered all of the evidence presented at trial, the Court does not conclude that a new trial is warranted. Mr. Bouamama testified that he complained to Ms. Slezak on more than one occasion about conduct he believed to be discriminatory. This conduct included Mr. Franklin's inquiry about his religion and national origin and Mr. Franklin's responsive comment that Mr. Bouamama was lucky Mr. Franklin liked him. Mr. Bouamama testified that he was terminated by Ms. Slezak and Mr. Franklin within a matter of days of his last complaint. The evidence suggested that other individuals denied a promotion to a Sales Supervisor position were offered continuing positions on the sales floor. Although Defendant claimed to have made the same offer to Mr. Bouamama, the jury chose to believe Mr. Bouamama's testimony that he was not given such an option, but instead was terminated by Ms. Slezak and Mr. Franklin. Mr. Bouamama further testified that he was immediately escorted out of the building by Ms. Slezak. From this and other evidence, the jury could have concluded that Mr. Bouamama was terminated in retaliation for his complaints about conduct by Mr. Franklin that he regarded as discriminatory. The issue is not whether the Court would have reached that conclusion, but whether the Court is left with a definite and firm conviction that a mistake has been committed. Mindful of the respect that must be afforded the collective wisdom of the jury, the Court does not conclude that such a mistake occurred in this case.

**D.     Motion for New Trial Based on Back Pay and Punitive Damages.**

Defendant argues that the Court should hold a new trial because the jury awarded Mr. Bouamama $135,000 in back pay. The back pay verdict, however, is merely advisory. The question of back pay is an equitable remedy for the Court to decide. The jury's advisory verdict certainly is not a basis for a new trial.

1  Defendant also argues that the jury's award of $250,000 in punitive damages requires
2 a new trial. The Court does not agree. Defendant correctly notes that punitive damages are
3 warranted only if Plaintiff proves that Defendant acted with malice or reckless indifference
4 to Mr. Bouamama's federally protected rights. Dkt. #196 at 12 *(citing Kolstad v. Am. Dental
5 Ass'n*, 527 U.S. 526, 535 (1999)). The Court concludes, however, that a jury reasonably
6 could have found that this standard was satisfied by Plaintiff's evidence. The most
7 prominent actor in Plaintiff's claim of retaliation was Ms. Slezak. According to Plaintiff's
8 evidence, she was the individual to whom Mr. Bouamama complained, one of two
9 individuals who terminated Mr. Bouamama, and the individual who escorted Mr. Bouamama
10 from the building. She was also Defendant's director of human resources and an individual
11 trained in discrimination law. If the jury accepted Mr. Bouamama's claim of her
12 involvement in his retaliation, the jury also could have concluded that she acted with reckless
13 indifference to the federally protected rights of which she clearly was aware.

14  **E.  Statutory Cap on Compensatory and Punitive Damages.**

15  Defendant contends that it qualifies for the $200,000 statutory cap on compensatory
16 and punitive damages in 42 U.S.C. § 1981a(b)(3)(C) because it had between 200 and 500
17 employees on the date of Mr. Bouamama's termination. Defendant cites several cases for
18 the proposition that the applicable number of employees must be determined during the year
19 the discriminatory act took place, not during the year in which the Court's judgment is
20 rendered. *See, e.g., Vance v. Union Planters Corp.*, 209 F.3d 438, 446 (5th Cir. 2000).
21 Plaintiff cites no authority to the contrary.

22  Plaintiff argues that Defendant has failed to present sufficient evidence that it had
23 fewer than 500 employees in each of 20 or more calendar weeks in the year of Mr.
24 Bouamama's termination, as required by the statute. Dkt. #199. Ms. Slezak testified without
25 contradiction, however, that Defendant had approximately 45 employees when she started
26 with the company in December of 2001 and just over 200 employees when Mr. Bouamama
27 was terminated in April of 2003. Dkt. #187 at 132-33. This is sufficient evidence that
28 Defendant had fewer than 500 employees during 20 or more weeks in the year in which Mr.

- 5 -

Bouamama was terminated or in the preceding year. The jury's award of compensatory and punitive damages will therefore be capped at $200,000.

## II.     Plaintiff's Motion.

### A.     Record keeping.

Section 709(c) of Title VII requires employers to "make and keep such records relevant to the determinations of whether unlawful employment practices have been or are being committed" and "preserve such records for such periods . . . as the Commission shall prescribe by regulation[.]" 42 U.S.C. § 2000e-8(c). EEOC regulations provide that "[a]ny personnel or employment record made or kept by an employer . . . shall be preserved by the employer for a period of one year from the date of making the record or the personnel action involved, whichever occurs later." 29 C.F.R. § 1602.14 (2000). The regulation also provides that the "employer shall preserve all personnel records relevant to the charge or action until . . . final disposition of the charge or action." *Id.*

Plaintiff argues that Defendant violated these requirements by not preserving the 28 two-page interview questionnaires completed by Messrs. Franklin and Villeneuve during the Sales Supervisor selection process. Dkt. #197 at 2. Ms. Slezak testified that she initially retained these documents, but somehow later misplaced them. Ms. Slezak also testified that she knew she should have preserved the records.

Defendant counters that the interview questionnaires were insignificant sketches of the interviewers' impressions that were used to complete a one-page summary sheet that ranked each of the candidates. Dkt. #198 at 2. Defendant claims the interview sheets were merely rough drafts of the final ranking sheet. *Id.* In the case cited by Defendant, the Seventh Circuit ruled that a company did not err in disposing of individual ranking sheets by different reviewers that were then used to create a composite, final ranking sheet. *See Rummery v. Illinois Bell Telephone Co.*, 250 F.3d 553, 558-59 (7th Cir. 2001). This case is different, however, because Defendant disposed of interview questionnaires consisting of nine questions, not merely individual numerical rankings that were used to produce a one-page summary ranking sheet. Although the information used in making the ranking sheet

came from the questionnaires, the questionnaires were not merely rough drafts of the final ranking. *See Favors v. Fisher*, 13 F.3d 1235, 1239 (8th Cir. 1994) (finding company obligated to retain a ten-question test administered to candidates for promotion). The Court finds that Defendant failed to comply with the recordkeeping requirements of 29 C.F.R. § 1602.14. The Court also finds, however, that the failure was inadvertent. This fact will be taken into account in fashioning an appropriate remedy.

**B.     Back Pay.**

Plaintiff asks the Court to award $135,000 in back pay to Mr. Bouamama, consistent with the jury's advisory verdict. Dkt. #194. Victims of discrimination are entitled to back pay under Title VII. *See* 42 U.S.C. § 2000e-5(g)(1); *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1020 (9th Cir. 2000). Mathematical certainty is not necessary. *Kaplan Int. Alliance of Theatrical and Stage Employees*, 525 F.2d 1354, 1362-63 (9th Cir. 1975).

Mr. Bouamama testified at trial that he lost wages of between $120,000 and $150,000. He arrived at these numbers by projecting the amount he would have made had he stayed in Defendant's employ at a salary of $46,000. Using information from his W-2 tax forms, he then deducted wages he earned at Midland Credit Management after his termination. Defendant presented no evidence on the amount of Mr. Bouamama's lost pay.

Defendant argues that Plaintiff provided insufficient evidence of back pay. Dkt. #198 at 3. Because any evidence of back pay was testimonial and partially based on W-2 forms not admitted into evidence, Defendant claims that "the jury's proposed back pay award of $135,000.00 is not supported by the evidence, is contrary to the law, and a new trial must be granted." *Id*. at 4. In support, Defendant recites the definition of back pay, which is the "difference between actual earnings for the period and those which [Mr. Bouamama] would have earned absent the discrimination by defendant." *Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1158 (9th Cir. 1999). Defendant concludes that "Plaintiff failed to provide evidence of either figure – Bouamama's actual earnings after leaving Go Daddy or Bouamama's income had he remained." Dkt. #198 at 4.

1  As an initial matter, the Court notes again that the jury's advisory verdict is no basis
2  for a new trial. Defendant can urge the Court to reject the advisory verdict or can present
3  additional arguments regarding the appropriate amount of back pay, but the advisory verdict
4  is not a basis for trying this case anew.

5  Addressing the first issue – Mr. Bouamama's earnings after termination – Defendant
6  cites *Taylor v. Philips Indus. Inc.*, 593 F.2d 783, 787 (7th Cir. 1979), for the proposition that
7  back pay damages are not available when the plaintiff cannot provide any evidence of actual
8  earnings following her discharge. But Plaintiff did provide evidence of Mr. Bouamama's
9  earnings after discharge. Unlike *Taylor*, Mr. Bouamama testified that he used his post-
10 termination W-2 forms to mitigate the back pay award he sought. Defendant presented no
11 evidence to the contrary.

12 Addressing the second component of the back pay determination – Mr. Bouamama's
13 income had he remained at Go Daddy – Defendant argues that Plaintiff did not provide
14 evidence that Mr. Bouamama would have continued to make $46,000 per year. Defendant
15 notes that Mr. Bouamama's position of Inbound Sales Manager was eliminated and asserts
16 that there is no reliable measure of how much he would have made in a new position. Dkt.
17 #198 at 5.

18 The Court agrees with part of Defendant's argument. The evidence at trial established
19 that Mr. Franklin embarked upon a significant reorganization of Defendant's sales operation
20 immediately upon his arrival, including elimination of the Inbound Sales Manager position.
21 This decision was made before Mr. Bouamama's protected activity. Mr. Bouamama and a
22 number of other affected employees applied for several new Sales Supervisor positions that
23 were to be created as part of the reorganization. Mr. Bouamama claimed that he was denied
24 the new position because of his religion and national origin, but the jury rejected this claim.
25 Dkt. #194. The jury also found that Mr. Bouamama would have been denied the Sales
26 Supervisor job even if his protected activity had played no role in Defendant's decision. *Id.*
27 The undisputed evidence further demonstrated that employees who were not promoted to
28 Sales Supervisor were offered positions on the sales floor as Sales Representatives. Thus,

had no unlawful retaliation occurred, Mr. Bouamama's Inbound Sales Manager position would have been eliminated, he would not have received the Sales Supervisor position, and he, like the other unsuccessful applicants, would have been offered a position as Sales Representative.

Given these facts, Mr. Bouamama would not have continued to make $46,000 dollars per year had he remained with Defendant. The undisputed evidence at trial demonstrated that unsuccessful applicants who accepted Sales Representative positions received a cut in pay. Trial Exs. 96-99; Transcripts, 12-13-06 at 19-21; 12-14-06 at 247-48. Some of the unsuccessful applicants received $14.40 per hour. Dkt. #201 at 5 n. 2. Although the parties presented no evidence concerning the amount Mr. Bouamama would have received had he become a Sales Representative, the Court finds it reasonable to conclude he too would have been paid $14.40 per hour.

Using this amount, the Court will award Mr. Bouamama a total of $36,552 in back pay. This figure includes two components: (1) $14.40 per hour of back pay during the eleven months Mr. Bouamama was unemployed after his termination by Defendant, and (2) $1.40 per hour for the remaining time up to the present, during which he has been employed by Midland Credit Management at $13.00 per hour. Trial Ex. 282. The Court arrived at $1.40 per hour by subtracting Mr. Bouamama's Midland wage of $13.00 per hour from the $14.40 he would have earned had he become a Sales Representative at Defendant.[2]

Plaintiff also seeks to recover pre-judgment interest on the back pay award. Dkt. #197 at 5. An award of prejudgment interest serves the goal of making an employee whole after a defendant has violated Title VII. *See Ford v. Alforo*, 785 F.2d 835, 842 (9th Cir. 1986). Plaintiff computed this interest to be $19,043 based on the IRS prime rate and a back pay

---

[2] The Court recognizes that Mr. Bouamama might have received raises in the more than three years since he would have become a Sales Representative at Defendant, but Plaintiff presented no evidence concerning the likely amount of such raises. Nor did Plaintiff present evidence to show that Mr. Bouamama's earning potential would have been greater at Defendant than at Midland Credit Management.

- 9 -

award of $135,000. The Court has taken judicial notice of the IRS interest rates used for computation of back pay (Dkt. #197, Ex. 5) and has reviewed Plaintiff's methodology in determining the amount of interest, which the Court finds reasonable. The Court has reduced the prejudgment interest proportionately with the reduction of back pay and will award $5,156 of prejudgment interest.

### C. Reinstatement and Front Pay.

Plaintiff asks the Court to reinstate Mr. Bouamama to a position comparable in pay and responsibility to Inbound Sales Manager. Dkt. #197 at 6. Alternatively, Plaintiff asks the Court to award Mr. Bouamama three years of front pay at $46,000 per year. *Id*. at 7.

Reinstatement is preferred to front pay under Title VII. *See Cassino v. Reichold Chems., Inc.*, 817 F.2d 1338, 1346 (9th Cir. 1987). Front pay is appropriate when reinstatement is not viable for reasons such as antagonism between the parties or when no position is available due to a reduction in force. *Id*.; *see also Thorne v. City of El Segundo*, 802 F.2d 1131, 1137 (9th Cir. 1986); *Cancellier v. Federated Dept. Stores*, 672 F.2d 1312, 1319 (9th Cir. 1982). Ultimately, reinstatement is not a mandatory remedy, but rather "lies within the discretion of the trial court after careful consideration of the particular facts of the case." *Id*.

Defendant argues that Mr. Bouamama is not entitled to reinstatement as Inbound Sales Manager or a comparable position because "[t]he undisputed evidence in the trial record establishes that Go Daddy eliminated the Inbound Sales Manager position *before* Bouamama allegedly engaged in protected activity." *Id*. (emphasis in original). The Court agrees. As explained above, the evidence and jury verdict confirm that if no retaliation had occurred, Mr. Bouamama's Inbound Sales Manager position would have been eliminated, he would not have received the Sales Supervisor position, and he would have been offered a position as Sales Representative. If the Court were to order reinstatement, therefore, it would be to the lower position of Sales Representative.

The Court concludes, however, that such reinstatement is not warranted. Sales Representative is not truly the position Mr. Bouamama seeks. Plaintiff presented evidence

- 10 -

1  that Mr. Bouamama had been promoted beyond the position of Sales Representative some
2  time before the events at issue in this case, and Mr. Bouamama complained at trial that he
3  was not given the higher position of Sales Supervisor.  The evidence further suggested that
4  Mr. Bouamama's previous work as a Sales Representative had been less than fully
5  satisfactory for him and his supervisors.  In addition, Mr. Bouamama has been employed
6  since 2004 with Midland Credit Management and presented no evidence to suggest that he
7  has a less promising future with that company than he would have as a Sales Representative
8  at Defendant.  What is more, Mr. Bouamama has made accusations of discrimination against
9  managers still at Defendant, has been engaged in litigation against Defendant for several
10 years, and will recover substantial actual and punitive damages in this case.  All of these facts
11 convince the Court that reinstatement is neither warranted nor wise.  *See Cassino*, 817 F.2d
12 at 1347 (denying reinstatement because of hostility between the parties); *Cancellier*, 672
13 F.2d at 1319-20 (denying reinstatement because of history of acrimony toward plaintiff and
14 because plaintiff's verdict was sufficient to make plaintiff whole).

15        Plaintiff alternatively seeks front pay of $46,000 for three years.  Such an award is
16 clearly unwarranted given Mr. Bouamama's current employment at Midland Credit
17 Management and the fact that his position as Inbound Sales Manager was eliminated before
18 he engaged in protected activity.  Moreover, Plaintiff presented no evidence from which the
19 Court could conclude that his future earning potential at Midland would be less than his
20 potential at Defendant.  This lack of evidence was conceded by Plaintiff's counsel during
21 trial. Transcript, 12-15-06 at 6.  Had Plaintiff presented evidence on the issue of front pay,
22 the Court would have sought an advisory verdict from the jury.  Given the absence of such
23 evidence, however, the Court concluded not to seek such a verdict, a decision with which
24 Plaintiff's counsel agreed.  *Id*.  Because Plaintiff presented no evidence of lost future
25 earnings on the part Mr. Bouamama, the Court will deny Plaintiff's request for an award of
26 front pay.

27
28

### D.     Non-Monetary Equitable Relief.

Plaintiff requests several types of non-monetary equitable relief. *See* Dkt. #197 at 8-10. When an employer engages in an unlawful employment practice, a court may "enjoin [the employer] from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include . . . any . . . equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1). "[T]he district court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975). "Generally, a person subjected to employment discrimination is entitled to an injunction against future discrimination unless the employer proves it is unlikely to repeat the practice." *EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1544 (9th Cir. 1987) (citations omitted).

Plaintiff first requests that the Court permanently enjoin Defendant from violating Title VII. Dkt. #197 at 9. Such an injunction would: "(1) instruct [Defendant] that it must comply with federal law, (2) subject it to the contempt power of the federal courts if it commits future violations, and (3) reduce the chilling effect of its alleged retaliation on its employees' exercise of their Title VII rights." *Goodyear*, 813 F.2d at 1544.

Defendant has not carried its burden of proving that it is unlikely to repeat the practice of retaliating against employees who engage in protected activity. Although Defendant states that one of the discriminators, Craig Franklin, is no longer with the company, other alleged discriminators remain. Evidence that Defendant has undertaken Title VII training and education programs fail to prove that no further Title VII violation will occur. *See id.* (stating that an "employer that takes curative actions only after it has been sued fails to provide sufficient assurances that it will not repeat the violation to justify denying an injunction). Finally, Defendant states that Plaintiff has not proven that Defendant retaliated against other employees either before or after Mr. Bouamama's termination. But as the Ninth Circuit has made clear, it is Defendant's burden, not Plaintiff's to prove that discrimination

is unlikely to recur. *See id.* The Court will enjoin Defendants from further violating Title VII.

Second, Plaintiff requests that Defendant "be required to implement injunctive relief, including but not limited to employee training on Title VII and retaliation, post a notice regarding retaliation, review and/or revise its employment discrimination policies and reporting requirements." Dkt. #197 at 9. Defendant responds that it is already conducting training of its employees. On the basis of the evidence presented at trial – evidence which demonstrated that Defendant employs a diverse work force and evidence which was devoid of any suggestion of other discriminatory activity – the Court is unwilling to interfere with Defendant's voluntary Title VII compliance and finds this type of injunctive relief unnecessary. *See* 42 U.S.C. § 2000e-5(g)(1).

Third, Plaintiff requests that Defendant be required to post a notice stating its intent to comply with Title VII and advising employees of their rights for relief from discrimination. Dkt. #179 at 9. Plaintiff believes that "[ s]uch notice will serve the dual purpose of educating Go Daddy's current and future employees regarding their rights and remedies under Title VII and reminding Go Daddy of its obligation to uphold those rights." *Id.* The Court agrees. This type of injunctive relief is minimally intrusive, will provide clear expectations regarding Defendant's conduct, and will identify remedies available to employees who might experience discrimination.

Fourth, Plaintiff asks the Court to require Defendant to comply with the recordkeeping requirements of 29 C.F.R. § 1602.14, as well as to advise the EEOC of all decisions covered by that regulation and to make all records available to the EEOC for inspection. *Id.* Because the Court finds that Defendant failed to follow the recordkeeping requirements in this case, the Court will order Defendant to comply with the requirements of 29 C.F.R. § 1602.14. The Court will not, however, order Defendant to advise the EEOC of all decisions covered by the regulation or to make all records available for EEOC inspection. The evidence at trial demonstrated to the Court's satisfaction that the loss of records in this case was accidental,

- 13 -

and the existing regulations and the Court's order will provide sufficient assurances that Defendant will not again violate the recordkeeping requirements.

Finally, Plaintiff asks the Court to impose monitoring and reporting requirements for two years. *Id.* at 10. The Court will deny this relief. The jury rejected Plaintiff's claim that Defendant discriminated on the basis of national origin or religion. Although the jury found that Defendant engaged in unlawful retaliation, one instance of such conduct in a company that has grown to over 1,300 employees does not warrant the imposition of monitoring and reporting requirements. The substantial monetary judgments imposed by this case, the injunctions that Defendant comply with Title VII and the recordkeeping regulations, and the requirement that Defendant post notices concerning Title VII compliance and relief constitute sufficient sanctions for the single instance of retaliation established at trial.

**IT IS ORDERED:**

1. Defendant's Motion for Judgment as a Matter of Law Pursuant to Rule 50(b), and/or Motion for New Trial Pursuant to Rule 59(a) (Dkt. #196) is **granted** with respect to the statutory cap on compensatory and punitive damages and **denied** with respect to all other requested relief.

2. Plaintiff's recovery of punitive and compensatory damages shall be reduced to a total of $200,000, consisting of $5,000 in compensatory and $195,000 in punitive damages.

3. Plaintiff's Motion Regarding Back Pay, Recordkeeping and Equitable Relief (Dkt. #197) is **granted** in part and **denied** in part as set forth above.

4. Mr. Bouamama is awarded $36,552 in back pay and $5,156 in prejudgment interest.

5. Defendant is enjoined from retaliating against any employee who complains of discrimination, opposes any act or practice made unlawful by Title VII of the Civil Rights Act of 1964, or files a charge, testifies, assists, or participates in any manner in an investigation, proceeding, or hearing under Title VII.

6. Defendant shall comply with the recordkeeping requirements of 29 C.F.R. § 1602.14.

7. For a period of 12 months following entry of final judgment, Defendant shall post a notice to all employees in at least three prominent in-house locations frequented by Defendant's employees. The notice shall explain Defendant's responsibilities and the employees' rights under Title VII, including the employees' right to complain about or oppose discrimination free from retaliation, and shall provide the addresses and telephone numbers of the Phoenix office of the Equal Employment Opportunity Commission and the Arizona Civil Rights Division.

8. Within ten days of this order, Plaintiff shall lodge a proposed final judgment accurately reflecting the decisions in this order.

DATED this 6th day of April, 2007.

_David G. Campbell_
David G. Campbell
United States District Judge